UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TIMOTHY J. STEEL,
        Plaintiff                    Civil Action No. 09-11658

v.

                             District Judge Denise Page Hood
                             Magistrate Judge R. Steven Whalen

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.
_____/

## <u>AMENDED REPORT AND RECOMMENDATION</u>

Plaintiff Timothy Steel brings this action under 42 U.S.C. §405(g) challenging a final

decision of Defendant Commissioner denying his application for Disability Insurance

Benefits and Supplement Security Income under the Social Security Act. Both parties have

filed motions for summary judgment which have been referred for a Report and

Recommendation pursuant to 28 U.S.C. §636(b)(1)(B). This Court issued its original Report

and Recommendation on March 19, 2010, recommending that Defendant's motion be granted

and Plaintiff's motion be denied. *Docket #16.* On April 1, 2010, Defendant filed an

objection to the Report only to the extent that it referenced material that had been

subsequently withdrawn from the record. *Docket #17.* Aside from references to the

withdrawn material which have been removed from this report, this Court's analysis and

recommendation remain unchanged. Accordingly, I recommend that Defendant's motion be

GRANTED and Plaintiff's motion DENIED.

## PROCEDURAL HISTORY

On March 8, 2004, Plaintiff applied for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") alleging an disability onset date of October 13, 2000 (Tr. 63-65, 344-347). After the initial denial of benefits, he requested an administrative hearing, held before Administrative Law Judge ("ALJ") Ethel Revels in Detroit, Michigan on August 12, 2008 (Tr. 348-381). Plaintiff, represented by attorney Vernos Williams testified (Tr.352-376) as did Vocational Expert ("VE") Don Harrison (Tr. 376-380). On November 5, 2008, ALJ Revels found Plaintiff not disabled (Tr. 23). On March 6, 2009, the Appeals Council denied review (Tr. 4-6). Plaintiff filed for judicial review of the final decision on May 1, 2009.

## BACKGROUND FACTS

Plaintiff, born October 1, 1958, was 50 when ALJ Revels issued her decision (Tr. 63). Plaintiff, formerly employed as a press operator, swimming pool liner, quality control worker, and automotive supervisor, alleges disability as a result of degenerative disc disease, arthritis, and depression (Tr. 80, 92, 102).

### A. Plaintiff's Testimony

Plaintiff, 49 at the time of hearing, testified that he was right-handed, standing 5' 11" and weighing 142 pounds (Tr. 352). He attributed a recent weight loss to medication (Tr. 353). He reported that his most recent position (press operations) required him to lift between 20 and 50 pounds and stand or walk for most of his shift (Tr. 353). He indicated

that prior to the press operator work, he held two positions as an inspector, requiring lifting of up to 75 pounds (Tr. 354-355).

Plaintiff testified that he had not worked since undergoing surgery in November, 2000 for degenerative disk disease (Tr. 358-359). He reported that the surgery did not improve his condition, alleging that he continued to experience intense upper left arm, neck, and back pain as a result of bone spurs (Tr. 360). Plaintiff reported pain upon sitting, standing or walking for extended periods and denied that he could lift even a half gallon of milk (Tr. 361-362). He indicated that he could sit for a maximum of one hour and stand or walk a maximum of half an hour for before requiring a position change (Tr. 362-363). Plaintiff also reported that he began experiencing left leg numbness following the 2000 surgery (Tr. 363). Plaintiff denied that he had been referred to a specialist since undergoing surgery but noted that he had been seeing the same family physician for several years (Tr. 363).

Plaintiff testified that neck and back discomfort obliged him to spend a portion of his waking hours reclining, adding that he experienced interrupted nighttime sleep (Tr. 364-365). He reported that he attempted to relieve his pain by lying intermittently on a couch or floor or by pushing his back "up against" an office chair (Tr. 365). Plaintiff admitted that he was able to care for his own needs and could perform light household chores, but alleged that he required daily naps as a result of sleep disturbances (Tr. 366, 368). He reported that he spent most of his waking hours reading (Tr. 367).

Plaintiff opined that he would be unable to hold any job requiring the regular use of his left arm or hand (Tr. 367). He denied driving since the 2000 surgery as a result of his

inability to turn his head (Tr. 369-370). He also alleged anxiety and depression, noting that on occasion, he experienced anxiety upon leaving his house (Tr. 370-371). He reported that Paxil, prescribed by his family physician, worsened rather than improved his psychological symptoms (Tr. 370). He denied mental health treatment (Tr. 371). Upon further questioning, Plaintiff admitted that his driver's license had been suspended in 1986, noting that between 1986 and 2000 he had driven "a couple of times" (Tr. 372). He alleged that since the 2000 surgery he had drunk only "two glasses of wine with [his] wife" (Tr. 374). He reported that his failure to file for DIB until 2004 was because he was receiving long-term benefits from his former employer (Tr. 359).

### B. Medical Records

### 1. Treating Sources

In November, 2000, Plaintiff underwent an anterior cervical discectomy with fusion at C5-6 and C6-7 (Tr. 131, 165-167, 295-296). Sean R. Logan, M.D., remarked two weeks after the surgery that Plaintiff was recovering well, noting that "radicular arm pain" had resolved (Tr. 129). The following month, Plaintiff reported left arm pain "consistent with a C6 radiculopathy" (Tr. 127). Dr. Logan, prescribing physical therapy, noted that Plaintiff had not pursued his previous recommendations for postoperative therapy (Tr. 127-128). Imaging studies of the cervical spine performed the same week showed "mild to moderate encroachment of bilateral neural foramina at C5-6" (Tr. 278). In February, 2001, C. G. Osborne, M.D., administered trigger point injections without complications (Tr. 164, 247). Nerve conduction studies showed the absence of denervation or neuropathy (Tr. 242-243).

The following month, Dr. Osborne characterized the myofascial pain as "resolving" (Tr. 161). Also in March, 2001, Dr. Logan opined that Plaintiff did not require additional surgery and could return to his former work (Tr. 123-124). The following month, Plaintiff, stating that he was seeking long-term disability, asked Dr. Logan to review recently taken x-rays (Tr. 121-122). Dr. Logan opined that "there appears to be a good arthrodesis[1] that has occurred" (Tr. 122). In May, 2001 Dr. Logan reiterated that Plaintiff was "not a candidate for any surgical intervention," but prescribed physical therapy (Tr. 114).

April, 2003 imaging studies of the thoracic and lumbar spine were unremarkable (Tr. 266). The same month, Plaintiff reported recurrent back pain, noting improvement after being administered Demerol and Phenergan (Tr. 265). In September, 2003, Plaintiff sought emergency treatment after passing out, admitting to treating personnel that he had consumed three drinks and smoked marijuana prior to losing consciousness (Tr. 158, 261). At a followup appointment, Plaintiff stated that he had actually drunk *four* beers before passing out, adding that he smoked marijuana daily (Tr. 237). Brent C. DeVries, D.O., recommended that Plaintiff discontinue the use of tobacco, alcohol, and marijuana (Tr. 238).

In March, 2004, Jeffrey F. Wirebaugh, M.D., opined that "[d]ue to the described impairments from the cervical spondylosis, and left C6-7 radiculopathy," Plaintiff was unable to perform "all of the material and substantial duties of his last occupation or any of the other

---

[1] Arthrodesis refers to "the surgical fixation of a joint by a procedure designed to accomplish fusion of the joint surfaces by promoting the proliferation of bone cells." *See* http://medical-dictionary.the free dictionary.com.

occupations for which he is reasonably qualified by education, training, and experience" (Tr. 241). In April, 2004, Narendranath Lakshmipathy, M.D., administered nerve root injections at C6 and C7 without complications (Tr. 148). Plaintiff reported "a marked reduction in pain" following the procedure (Tr. 148). The following month, Plaintiff reported only limited improvement from repeated injections (Tr. 143). Dr. Lakshmipahty recommended spinal column stimulation (Tr. 141). The same month, a CT scan showed "degenerative lipping" at C5-6 (Tr. 147, 259). November, 2004 imaging studies showed "a slight narrowing of both neural foramina" but no disc herniation (Tr. 139, 157, 254).

In January, 2005, Plaintiff sought emergency treatment for "left rib pain" (Tr. 152). Plaintiff admitted occasional alcohol and daily marijuana use (Tr. 152, 251). Plaintiff was given Toradol and a prescription for Percocet (Tr. 153). In June, 2005, James Doone Jr., M.D., noted that Plaintiff reported a diagnosis of osteoarthritis and degenerative disc disease (Tr. 318). In July, 2005, Dr. Doone found that Plaintiff's "pain behavior" was proportionate to his condition (Tr. 190). He noted a normal range of motion studies in all muscle groups with "little or no motor loss" and "no impairment of his ability to do fine and gross manipulation" (Tr. 191). In January, 2006, Dr. Doone, noting that he had been Plaintiff's primary care physician since March, 2004, opined that Plaintiff was "totally disabled" as a result of "severe spondylosis of the cervical spine" (Tr. 186). In July, 2006, Dr. Doone noted that "it would be difficult for [Plaintiff] to do a very active job" (Tr. 188). The treating physician, admitting that he did not know Plaintiff "very well," opined as follows:

"I do think he would have difficulty standing, sitting, or walking in any one

> position for a long period of time. He would need to be able to change
> positions at will, probably lifting no greater than 20 pounds at a time, and
> probably no greater than 10 pounds frequently. He would not be able to move
> his upper body very often . . . not a lot of twisting or turning of the upper torso.
> He would not be able to move from one side to the other very quickly either.
> I think this would greatly impair his ability to seek employment as an unskilled
> laborer"

(Tr. 188-189). The same month, Dr. Doone noted that Plaintiff was in "no acute distress" (Tr. 343). In November, 2006, Plaintiff reported that Avinza was very helpful, but that he was unable to afford it (Tr. 342). In January, 2007, Dr. Doone remarked that "the combination of slow release morphine and [P]ercocet seems to be working pretty well" (Tr. 340). In May, 2007, Plaintiff was prescribed MS Contin (Tr. 337). In November, 2007, Plaintiff received a prescription for Ativan upon reporting anxiety (Tr. 331). Plaintiff complained of increased muscle spasms in April, 2008 (Tr. 326). June, 2008 treating notes indicate that Plaintiff was "much better" after switching to Oxycontin from a generic version of the same drug (Tr. 324).

### 2.   Consultive and Non-examining Sources

In February, 2003, Richard Deerhake conducted an independent medical examination of Plaintiff related to the application for long-term disability (Tr. 135-137). Dr. Deerhake opined that due to left-sided C-6 and C-7 radiculopathy, Plaintiff was unable to return to "factory type work" (Tr. 136, 230). In August, 2003, Sandra Stratford, M.D., criticizing Dr. Deerhake's conclusions as "subjective," opined that Plaintiff could return to work with lifting restrictions of 20 pounds and occasional above shoulder reaching (Tr. 232-233). She also found "no restrictions on standing, sitting, [or] walking," but noted that Plaintiff should

avoid "repetitive neck flexion, extension, or twist" (Tr. 233).

In July, 2004, Sushil M. Sethi, M.D., performed a consultive examination of Plaintiff, noting that he was currently undergoing trigger point injections (Tr. 138). Plaintiff reported that he currently spent most of his day playing computer games and monitoring public security (Tr. 138). Plaintiff indicated that he continued to smoke, stating that he had stopped drinking in 2003 (Tr. 138).

In August, 2005, a Psychiatric Review Technique found the absence of a psychological condition (Tr. 171). A March, 2006 Physical Residual Functional Capacity Assessment performed on behalf of the SSA found that Plaintiff could lift 20 pounds occasionally and ten pounds frequently; stand, walk, or sit for six hours in an eight-hour workday; and push and pull without limitation in the lower extremities (Tr. 193). Plaintiff's *upper* extremity pushing and pulling abilities were deemed limited as a result of his cervical spine conditions (Tr. 193). Plaintiff was limited to frequent (as opposed to *constant*) ramp and stair climbing, balancing, stooping, kneeling, and crouching (Tr. 194). He was limited to *occasional* crawling and precluded from all ladder, rope, or scaffold climbing (Tr. 194). Plaintiff's manipulative impairments were confined to a limitation on reaching (Tr. 195). The Assessment found the absence of visual, communicative, or environmental limitations (Tr. 195-196). The Assessment concluded that Plaintiff's allegations of limitations were only "partially credible," finding that his claim that he was unable to lift was unsupported by the medical file (Tr. 197).

In August, 2006, James N. Spindler, M.S., conducted a consultive psychological

evaluation of Plaintiff (Tr. 200-206). Plaintiff admitted to two DWI convictions leading to the 1984 suspension of his driver's license and a criminal conviction for selling marijuana in 1980 (Tr. 202). Plaintiff denied using marijuana since high school (Tr. 202). He alleged that his neck and back discomfort precluded work, noting that he had not received vocational rehabilitation (Tr. 202). Plaintiff exhibited unremarkable communicative skills but appeared depressed and anxious (Tr. 203-204). He reported experiencing occasional anxiety attacks upon leaving his house, but indicated that he was capable of taking care of his shopping and personal needs (Tr. 204). He denied daytime naps (Tr. 205). Spindler assigned Plaintiff a GAF of 55[2] (Tr. 205).

An October, 2006 Psychiatric Review Technique performed on behalf of the SSA found the presence of an affective disorder, anxiety, a personality disorder, and a history of substance abuse (Tr. 212). Plaintiff was deemed moderately limited in the ability to maintain concentration, persistence, and pace but otherwise experienced at most mild functional limitations (Tr. 222). A Mental Residual Functional Capacity Assessment conducted the same day found *moderate* limitations in the ability to carry out detailed instructions, maintain attention and concentration for extended periods, and respond appropriately to workplace changes (Tr. 209). The Assessment found Plaintiff otherwise

---

[2]A GAF score of 51-60 indicates "moderate symptoms (occasional panic attacks) or moderate difficulty in social, occupational, or school function." American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders –Text Revision* at 34 (*DSM-IV-TR*), 30 (4th ed.2000).

"not significantly limited," concluding that Plaintiff could "follow simple instructions" and was "capable of maintaining attention, concentration, and persistence for routine and repetitive tasks" (Tr. 210).

### C. VE Testimony

VE Don Harrison classified Plaintiff's past relevant work as a press operator as semi-skilled at the medium exertional level and work as a quality control inspector as semi-skilled and exertionally light[3] (Tr. 376-377). He found the absence of transferrable skills (Tr. 377).

The ALJ then posed the following question, taking into account Plaintiff's age, education level, and work experience:

> "Assume . . . that our hypothetical Claimant needs work that is simple, repetitive, routine type tasks because there are moderate limitations in ability to maintain concentration for extended periods, as well as to remember or carry out detailed instructions due to pain and depression. But will - - must not require repetitive twisting of the neck, upper torso. It must not require lifting above shoulder level with the left non-dominant upper extremity. It must not require crawling, climbing of ladders, ropes, or scaffolds, and unlimited reaching with the -- no work at hazardous heights or around dangerous machinery. . . . [W]hat jobs, if any would our hypothetical Claimant be vocational[ly] qualified to perform?"

(Tr. 377).

VE testified that given the above limitations, the individual could perform the work

---

[3]20 C.F.R. § 404.1567(a-d) defines *sedentary* work as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools; *light* work as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds;" *medium* work as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds;" and that exertionally *heavy* work "involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds.

of an inspector (exertionally light, 1,500 jobs in the regional economy and exertionally sedentary, 1,000) and monitoring positions such as a surveillance monitor or greeter (1,000) (Tr. 378). In response to amended hypothetical limitations by the ALJ, the VE testified that if the hypothetical individual were also limited by a sit/stand option limiting sitting to an hour and standing to a half hour and lifting 20 pounds occasionally, the jobs numbers would be reduced to inspector (light 1,000, sedentary, 750) with no change to the monitor or greeter positions (Tr. 378). The VE stated that his findings were consistent with the information found in the Dictionary of Occupational Titles ("DOT") except for the sit/stand testimony which was based on his own professional experience (Tr. 378-379).

In response to questioning by Plaintiff's attorney, the VE testified that if the individual were also encumbered by the need to recline frequently, difficulty leaving his house, and concentrational problems, all work would be precluded (Tr. 379). The VE also found that difficulties in lifting, handling, fingering, and feeling (along with severe neck and shoulder pain upon movement) would also preclude all of the above-mentioned jobs (Tr. 379).

### D. The ALJ's Decision

ALJ Revels found that although Plaintiff's conditions of "osteoarthritis, depression and substance abuse" were severe impairments under 20 C.F.R. § 404.1520(c), none of the conditions met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 16).

The ALJ determined that although Plaintiff was unable to perform his past relevant work, he retained the following residual functional capacity ("RFC"):

"To stand and/or walk six hours out of an eight hour work day with a sit/stand option that does not require the claimant to sit more than an hour at a time or stand more than a half hour at a time; lift ten pounds frequently, twenty pounds occasionally; the claimant is limited to simple, repetitive, routine-type tasks because he is moderately limited in the ability to maintain concentration for extended periods as well as to understand, remember, carry out detailed instructions due to pain and depression. In addition, the work must not require repetitive twisting of the neck or upper torso; must not require lifting of the left non-dominant upper extremity above shoulder level; must not require crawling, climbing of ladders, ropes or scaffolds, with limited reaching; and the work cannot be at hazardous heights or around dangerous machinery"

(Tr. 18).

Citing the VE's job numbers reflecting her amended hypothetical question (*supra* at Tr. 378) the ALJ found that Plaintiff was capable of a significant number of exertionally light and sedentary positions (Tr. 22).

The ALJ found Plaintiff's claims "less than fully credible" (Tr. 20). In support of the credibility determination, the ALJ noted that Plaintiff's hearing testimony that he drank rarely was contradicted by admissions to emergency room personnel that "he use[d] marijuana daily and alcohol occasionally" (Tr. 20). She rejected Dr. Doone's Janaury, 2006 opinion that Plaintiff was "totally disabled" on the basis that it was contradicted by other portions of the medical record (Tr. 20-21)(*citing Cutlip v. Secretary of Health and Human Services,* 25 F.3d 284 (6th Cir. 1994)).

## **STANDARD OF REVIEW**

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence. 42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir. 1985). Substantial evidence is more than a

scintilla but less that a preponderance. It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)(en banc). In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

## FRAMEWORK FOR DISABILITY DETERMINATIONS

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she

can perform other work in the national economy.  20 C.F.R. §416.920(a).  The plaintiff has

the burden of proof as steps one through four, but the burden shifts to the Commissioner at

step five  to demonstrate that, "notwithstanding the claimant's impairment, he retains the

residual functional capacity to perform specific jobs existing in the national economy."

*Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

## ANALYSIS

### A.  The Hypothetical Question

Plaintiff argues first that the hypothetical question posed to the VE did not account for

all of his impairments.  *Plaintiff's Brief, Docket #8* at 11.  Citing *Varley v. Secretary of Health*

*& Human Services*, 820 F.2d 777, 779 (6th Cir. 1987), he contends that the hypothetical

question did not include "limitations for handling, grasping, feeling, pushing, or pulling

despite the fact that there was ample evidence in the record for such limitations."  *Id.* at 14.

On a related note, Plaintiff contends that the ALJ failed to explain her reasons for rejecting

his counsel's proposed hypothetical limitations.  *Id.* (*citing* Tr. 380).

*Varley* sets forth the Sixth Circuit's requirements for a hypothetical question.

"Substantial evidence may be produced through reliance on the testimony of a vocational

expert in response to a hypothetical question, but only if the question accurately portrays [the]

plaintiff's individual physical and mental impairments." *Id*. at 779 (internal citations omitted);

*See also Webb v. Commissioner of Social Sec*. 368 F.3d 629, 632 (6th Cir. 2004).  The

hypothetical question must be supported by record evidence.

Contrary to Plaintiff's view, substantial evidence and even a preponderance of

evidence easily supports the ALJ's exclusion of certain manipulative and postural limitations. In August, 2003, after reviewing Plaintiff's medical files, consultive physician Sandra Stratford determined that Plaintiff could perform exertionally light work limited to occasional above shoulder reaching and an avoidance of "repetitive neck flexion, extension, or twist" (Tr. 233). In addition to adopting Dr. Stratford's limitation on "repetitive twisting of the neck [and] upper torso," the ALJ imposed even greater limitations by precluding "*all* lifting above shoulder level" (Tr. 377)(emphasis added). Plaintiff's contention that limitations in handling, grasping, and feeling ought to have been included in the hypothetical question is contradicted by Dr. Doone's July, 2005 finding of "no impairment" in the "ability to do fine and gross manipulation" (Tr. 191). Plaintiff's claim that he experienced debilitating manipulative and upper extremity limitations is also undermined by his own admission that he spent part of each day using a computer, which presumably requires frequent keyboarding (Tr. 138). Likewise, his acknowledgment that he regularly performed laundry chores including loading clothes into the washer and dryer supports the ALJ's finding that he was capable of a least a limited range of light work (Tr. 368). Because substantial evidence supports the choice of hypothetical limitations, the ALJ was not required to include the more restrictive limitations proposed by Plaintiff's attorney. *See Stanley v. Secretary of Health and Human Services,* 39 F.3d 115,118-119 (6th Cir.1994)(*citing Hardaway v. Secretary of Health & Human Servs.,* 823 F.2d 922, 927-28 (6th Cir.1987)). "[T]he ALJ is not obliged to incorporate unsubstantiated complaints into his hypotheticals."

### B. The Treating Physician Analysis

Next, Plaintiff takes issue with the ALJ's statement that she gave "great weight" to the opinion of treating physician Doone. *Plaintiff's Brief* at 14-16 (*citing* Tr. 21). He contends that in reality, the ALJ selectively adopted Dr. Doone's July, 2006 findings, while ignoring the physician's "multiple other statements" supporting the disability claim. *Id.* at 15.

"If uncontradicted, the [treating] physicians' opinions are entitled to complete deference." *Jones v. Secretary of Health and Human Services*, 945 F.2d 1365, 1370 (FN 7)(6th Cir. 1991). "[I]f the opinion of the claimant's treating physician is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record, it must be given controlling weight." *Hensley v. Astrue,* 573 F. 3d 263, 266 (6th Cir. 2009)(internal quotation marks omitted)(*citing Wilson v. Commissioner of Social Sec.* 378 F.3d 541, 544 (6th Cir. 2004));20 C.F.R. § 404.1527(d)(2)). Further,

> "[i]f the opinion of a treating source is not accorded controlling weight, an ALJ must apply certain factors--namely, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source--in determining what weight to give the opinion."

*Wilson,* at 544.

Regardless of whether substantial evidence is found elsewhere in the record to contradict the source's findings, the ALJ is required nonetheless to give "good reasons" for rejecting the treating physician's opinion:

"'The requirement of reason-giving exists, in part, to let claimants understand

the disposition of their cases,' particularly in situations where a claimant knows that his physician has deemed him disabled and therefore 'might be especially bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied.'"

*Wilson* at 544 (*citing Snell v. Apfel,* 177 F.3d 128, 134 (2d Cir.1999)).  The mere fact that a treating physician's opinion is contradicted by another source is not a sufficient basis for its rejection.  *Hensley,* 573 F.3d at 267 ("Nothing in the regulations indicates, or even suggests, that the administrative judge may decline to give the treating physician's medical opinion less than controlling weight simply because another physician has reached a contrary conclusion.").  However, in the presence of contradicting substantial evidence, the ALJ may reject all or a portion of the treating source's findings.  *Warner v. Commissioner of Social Sec.,* 375 F.3d 387, 391 -392 (6th Cir. 2004).

ALJ Revels complied with both the procedural and substantive requirements of *Wilson.*  First, acknowledging Dr. Doone's January, 2006 opinion that Plaintiff was disabled, the ALJ noted that in *July*, 2006, Doone stated in effect that Plaintiff could perform exertionally light work subject only to upper body limitations (Tr. 20 *citing* 188-189).  The ALJ's inference that Plaintiff's condition was improving was therefore reasonable (Tr. 20).  Second,  the ALJ, observed that  Dr. Doone's more recent records showed that Plaintiff looked "comfortable" after a medication change (Tr. 19).  Third, in regard to Dr. Doone's January, 2006 "disability" opinion, the ALJ correctly noted that the issue of disability is "reserved to the Commissioner of Social Security" (Tr. 21 *citing* SSR 96-5p).

Plaintiff also cites a letter written by Dr. Doone 13 days after the November 5, 2008 administrative decision (Tr. 10). Dr. Doone, apparently seeking to soften the effect of his July, 2006 finding that Plaintiff could perform a limited range of light work, states that in his "medical opinion that [Plaintiff] is unable to work, and will remain unable to work in the future" (Tr. 10).

Material submitted subsequent to the administrative decision is subject to a narrow review by the district court. *Cotton v. Sullivan,* 2 F.3d 692, 696 (6th Cir. 1993). Where the Appeals Council denies a claimant's request for a review of his application based on new material, the district court cannot consider that new evidence in deciding whether to "uphold, modify, or reverse the ALJ's decision." *Id.* at 695-96. Sentence Six of 42 U.S.C.A. § 405(g) states that the court "may at any time order additional evidence to be taken before the Commissioner of Social Security, but *only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding . . .*" (emphasis added). Hence, this Court may consider the additional evidence only for purposes of determining whether remand is appropriate under the sixth sentence of 42 U.S.C. §405(g).

Plaintiff's citation to material submitted after the ALJ's November 5, 2008 decision, is construed as a request for a "Sentence Six" remand. The fact that Plaintiff did not request a Sentence Six remand does not prevent the Court from granting such relief *sua sponte. Street v. Commissioner of Social Security,* 390 F.Supp.2d 630, 640 (E.D.Mich.2005). However,

assuming for the sake of argument that *Street, supra,* permits the Court to grant a remand under Sentence Six, Plaintiff has failed to show good cause for the untimely submission. The substance of Dr. Doone's November, 2008 letter indicates that it was written upon being informed that Plaintiff had been denied benefits (Tr. 10). "[G]ood cause contemplates more than strategic delay, or sandbagging, of evidence and more than simple miscalculation of the necessity of producing such evidence in the first instance to establish a claim of disability. *Haney v. Astrue,* 2009 WL 700057, *6 (W.D.Ky. 2009)(*citing Thomas v. Secretary,* 928 F.2d 255, 260 (8th Cir., 1991).

Further, because the letter does not refute, but only attempts to *explain* Dr. Doone's earlier findings that Plaintiff could lift up to 20 pounds subject to postural limitations, it is unlikely that it would change ALJ Revels' non-disability finding. Dr. Doone attempts to reconcile his July, 2006 finding that Plaintiff was capable of a limited range of work to his January, 2006 disability opinion. In attempting to clarify his July, 2006 statement, he states that "I was trying to show how restrictive a job description would have to be for [Plaintiff] to attempt it" (Tr. 10). Dr. Doone qualifies his opinion that Plaintiff is disabled by stating that he is "not a disability physician" nor is he "trained in disability determination, or the language of disability determination" (Tr. 10). Contrary to Dr. Doone's belief, Plaintiff's inability to lift more than 20 pounds combined with upper body postural limitations does not automatically render him disabled. As such, Dr. Doone's post-decision letter does not present grounds for a Sentence Six remand.

## C.  The Credibility Determination

Finally, Plaintiff argues that substantial evidence does not support the ALJ's credibility determination. *Plaintiff's Brief* at 16-17.  In particular, he contends that the ALJ's rejection of his claims of sleep disturbances and the inability to drive as a result of his neck condition reflects an erroneous reading of the record.  *Id.* at 17.

 The credibility determination, guided by SSR 96-7p, describes a two-step process for evaluating symptoms.  *See Duncan v. Secretary of Health and Human Services,* 801 F.2d 847, 853 (6th Cir.  1986). "First, the adjudicator must consider whether there is an underlying medically determinable physical or mental impairment. . .that can be shown by medically acceptable clinical and laboratory diagnostic techniques." *Id.*  Second, SSR 96-7p directs that whenever a claimant's allegations regarding "the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence," the ALJ must analyze his testimony "based on a consideration of the entire case record."  C.F.R. §404.1529(c)(3) lists the factors to be considered in making a credibility determination, including daily activities, "precipitating and aggravating factors," treatment received for relief of symptoms, and additional considerations relevant to functional limitations.  20 C.F.R. § 404.1529(c)(3).

Because Plaintiff has failed to show that the ALJ performed an inadequate credibility analysis or applied the wrong legal standard, the deference generally accorded the administrative credibility finding is appropriate here.  *Casey v. Secretary of Health and*

*Human Services,* 987 F.2d 1230, 1234 (6th Cir. 1993); *Richardson, supra,* 402 U.S. at 401,

1427. Plaintiff criticizes the ALJ for noting that he made inconsistent statements regarding

his driving record. Consistent with the ALJ's findings, the record shows that Plaintiff

originally testified that he stopped driving in 2000 as a result of the neck surgery (Tr. 369).

However, upon further questioning, Plaintiff admitted that in fact, his license had been

suspended in 1986 for reasons unrelated to his medical condition (Tr. 372). Plaintiff also

faults the ALJ for using 2001 physical therapy records to refute his testimony that he

experienced sleep disorders, arguing that "it is quite possible for [his] sleep pattern to have

changed in that time." *Plaintiff's Brief* at 17. However, he makes no effort to deny his earlier

admission that he experienced adequate, albeit interrupted, sleep.

Further, the ALJ correctly cited Plaintiff's multiple, inconsistent statements regarding

his alcohol use. Plaintiff testified at the hearing that he had drunk only two glasses of wine

since November, 2000 (Tr. 374). Yet, Plaintiff admitted to emergency treating sources in

September, 2003 that before passing out, he had consumed three drinks (Tr. 158, 237).

Although Plaintiff told a consultive examiner in July, 2004 that he had stopped drinking in

2003, Plaintiff admitted to occasional alcohol use (as well as daily marijuana use) to hospital

personnel in January, 2005 (Tr. 138, 152, 251). Additional record evidence supports the

credibility determination. Although Plaintiff alleged to Dr. Logan on April 4, 2001 that neck

pain prevented him from working, May 7, 2001 treating records indicate that he felt well

enough to jump on a trampoline. As such, the ALJ's credibility determination, consistent with

the rest of non-disability decision, should not be disturbed. Based on a review of this record as a whole, the ALJ's decision is easily within the "zone of choice" accorded to the fact-finder at the administrative hearing level. *Mullen v. Bowen, supra.*

## CONCLUSION

For the reasons stated above, I recommend that Plaintiff's Motion for Summary Judgment be DENIED, and Defendant's Motion for Summary Judgment GRANTED.

Any objections to this Report and Recommendation must be filed within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

S/R. Steven Whalen
R. STEVEN WHALEN
UNITED STATES MAGISTRATE JUDGE

Dated: April 1, 2010

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served on the attorneys and/or parties of record by electronic means or U.S. Mail on April 1, 2010.

S/Gina Wilson
Judicial Assistant